UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

INNTERNATIONAL HOSPITALITY
SERVICES, INC.,
        Plaintiff,

v.                                                          Civil Action No. 2:04cv774

HARTFORD CASUALTY INSURANCE
COMPANY,
        Defendant.

**OPINION AND ORDER**

Currently before the court are cross motions for summary judgment filed by plaintiff, Innternational Hospitality Services, Inc., and defendant, Hartford Casualty Insurance Company. After examination of the briefs and record, the court heard oral arguments from counsel on these motions. Based on the briefs and oral arguments made before the court, for the reasons set out herein, the court **GRANTS** the defendant's motion for summary judgment.

**I. Procedural History**

On December 27, 2004, the plaintiff, Innternational Hospitality Services, Inc. ("IHS"), filed a two-count complaint against Hartford Casualty Insurance Company ("Hartford"), based on an insurance policy issued by Hartford. In Count One of the complaint, the plaintiff seeks a declaratory judgment that Hartford has a duty to defend IHS in litigation brought by a third party. In Count Two, the plaintiff seeks damages that resulted from Hartford's alleged breach of the insurance contract as Hartford has refused to defend IHS.

After a motion to extend the time to file an answer was granted, Hartford filed its answer

on February 25, 2005.  The present dispute was originally scheduled for a trial by jury, however, the trial was postponed when the parties agreed that the matter could be settled on cross motions for summary judgment.  The defendant filed its motion for summary judgment on August 29, 2005, and the plaintiff filed its cross motion for summary judgment on September 2, 2005.  On September 14, 2005, this court heard oral argument from counsel on the cross motions for summary judgment.

## II. Factual Background

Plaintiff, IHS, is engaged in the rehabilitation and remodeling of commercial properties, primarily hotels, throughout the United States.  Compl. ¶ 13.  Defendant, Hartford Insurance, with knowledge of IHS's business activities, contracted with IHS to provide commercial general liability insurance coverage for IHS's operations within Virginia, as well as across the United States.  Compl. ¶¶ 8-9.  The parties stipulate that Hartford insurance policy number 21 SBA KQ7235 ("the Policy") was issued to IHS, that IHS received a complete copy of the Policy, and that attached to the Policy was the following endorsement:

**ASBESTOS HAZARD EXCLUSION**

> This insurance does not apply to any damages, judgments, settlements, loss [sic], costs or expenses that:
> 1. May be awarded or incurred by reason of <u>any claim or suit</u> alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occured <u>in whole or in part but for the asbestos hazard</u>; or
> 2. Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an asbestos hazard;[1] or

---

[1] Only clause 1 appears applicable to this matter because IHS's actions did not involve asbestos testing, removal, etc., but rather involved an unanticipated asbestos release that occured during hotel renovations.

> 3. Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an asbestos hazard.
>
> As used in this exclusion, asbestos hazard means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

Hartford Form SS 05 12 03 92 (emphasis added).

In January, 2003, during the time in which the Policy was in effect, IHS was hired by Thor Norfolk Hotel ("Thor") to complete renovations at Thor's hotel in Norfolk, Virginia. The hotel renovations were expedited in order to prevent the hotel from losing its status as a Doubletree Hotel franchise. Compl. ¶ 22. IHS contends that not only was it unaware of the presence of asbestos at the hotel, but that the presence of asbestos was actively concealed by Thor. Id. IHS alleges that Thor obtained knowledge of the asbestos when it purchased the hotel the previous year, and that Thor concealed the existence of asbestos from IHS after Thor determined that asbestos abatement would be too expensive. Pl. SJ memo ¶ 4. During the renovations performed by IHS at the hotel a "cataclysmic release" of asbestos occurred, causing over $2,000,0000 in damages which Thor attributes to IHS's negligence. Thor Ans. ¶ 51, 70. IHS maintains its ignorance as to asbestos in the building and blames the release on Thor's urgent timetable established in an effort to prevent the hotel from losing its franchise status.[2]

After the dispute over the asbestos release arose, IHS requested that, as per the Policy, Hartford defend IHS against Thor. However, in a letter dated June 14, 2004, Hartford denied coverage based on the Policy's Asbestos Exclusion. IHS obtained legal representation to defend

---

[2] Whereas IHS blames the release on Thor's timetable, Thor portrays IHS as rushing into the renovations before adequate studies could be completed. Furthermore, Thor alleges that IHS deviated from the renovation plan resulting in the release of asbestos.

itself against Thor and filed the instant action in an effort to compel Hartford to defend and indemnify IHS.  Plaintiff acknowledges the Asbestos Exclusion endorsement, however, claims that it conflicts with the portion of the Policy that confers coverage.  Furthermore, plaintiff alleges that the Asbestos Exclusion language "any claim or suit" necessarily implies a "legitimate" claim or suit, not a claim brought fraudulently and in bad faith.  Plaintiff claims both that Thor's suit was not legitimate and that Hartford was put on notice of this fact.  Plaintiff also claims that the cause of the underlying lawsuit was Thor's lies, not asbestos.  IHS seeks from this court both a declaratory judgment that Hartford has a continuing duty to defend IHS and damages resulting from Hartford's refusal to defend IHS against Thor.

### III.  Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is only appropriate when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exists no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985).  The court must assess the evidence and draw all permissible inferences in the nonmovant's favor.  Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Nevertheless, the non-movant must make a sufficient evidentiary showing such that a jury could reasonably find in its favor.  Celotex Corp., 477 U.S. at 322.  Thus, while it is the movant's burden to show the absence of a genuine issue of material fact, Pulliam Inv. Co., v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987), it is the non-movant's burden to establish the existence of such an issue.  See Matsushita, 475 U.S. at 586-87.

Additionally, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Likewise, district courts have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323-24). Cross motions for summary judgment are "especially appropriate in this case because the construction of insurance contracts is a legal question well suited for resolution by the court." Clark v. Metropolitan Life Ins. Co., 369 F. Supp. 2d 770, 774 (E.D. Va. 2005). Here, because this court grants the defendant's motion for summary judgment, all evidence must be viewed in the light most favorable to the plaintiff, IHS.

## IV. Analysis

### A. Choice of Law

A federal court sitting in diversity must apply the substantive law, including choice of law rules, of the state it is sitting in. Seabulk Offshore, Ltd. v. American Home Assur. Co., 377 F.3d 408, 418 (4th Cir. 2004). Under Virginia choice of law rules the "law of the place of the wrong" is applied. Blair v. Defender Services, Inc., 386 F.3d 623, 625 (4th Cir. 2004) (applying "Virginia substantive law consistent with Virginia's lex loci delicti, the law of the place of the wrong"); but see Seabulk Offshore, 377 F.3d at 419 ("Questions concerning the validity, effect, and interpretation of a contract are resolved according to the law of the state where the contract was made. . . . Under Virginia law, a contract is made when the last act to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to

the insured.").

Here, plaintiff's complaint alleges that Virginia law should be applied because the underlying action sounds in tort and the "acts or omissions" giving rise to this suit occurred in Virginia. Compl. ¶ 9-13. Defendant, however, contends that this court need not even address choice of law issues because there is no conflict in the relevant law between Florida, where the contract was issued, and Virginia where the loss occurred. Both parties' briefs rely on precedent from both Virginia and Florida; furthermore, the plaintiff conceded at oral argument that there was no material conflict in the pertinent law of Florida and Virginia.

This court finds, as the parties have agreed, that there is no significant difference between the relevant law of Florida and Virginia pertaining to this matter. Thus, because there is no material difference and "particularly absent the parties having briefed this issue," this court declines to make a ruling on application of the Virginia choice of law rules. Nossen v. Hoy, 750 F. Supp. 740, 743 (E.D. Va. 1990) ("Because the laws of the two states do not conflict in a material way . . . this Court will proceed without directly addressing the choice of law question.").[3]

### B. The Insurance Policy is not ambiguous on its face and therefore the Asbestos Exclusion endorsement must be applied by this Court.

Insurance contracts written by the insurer should be "construed liberally in favor of the insured and strictly against the insurer" and "[i]n the absence of a clear expression, a policy of

---

[3] If choice of law rules were addressed, it appears that applying Virginia law would be proper because the contract construction at issue relates to performance of the contract. The performance, or rather omission of performance, that this lawsuit is based on is the failure of Hartford to provide IHS legal defense in Virginia. Furthermore, the damage in the underlying case which gave rise to this lawsuit is based on an asbestos release that occured in Virginia.

insurance may not give a right in one paragraph and retract it in another." Moore v. Connecticut General Life Ins. Co., 277 So. 2d 839, 842 (Fla. App. 1973). An insurance policy may, however, provide "the risk or hazard assumed . . . and may exclude from the contract risks not assumed." Darden v. North American Ben. Ass'n, 197 S.E. 413, 415 (Va. 1938). Additionally, an insurance contract must be construed as a whole, and the clear provisions must be given "the construction and effect consonant with the apparent object." Id.

Looking closer at the facts of Moore, the life insurance policy at issue provided two conflicting dollar amounts that the insured would recover if he suffered a complete disability. Moore, 277 So. 2d at 840-41. The general provisions of the contract stated that recovery for complete disability was the total amount of term insurance, defined as the "basic term" insurance plus any "additional term coverage."[4] Id. at 841. However, at the top of the same page that stated recovery was the total term insurance was a clause which read: "The provisions set forth on this page will apply only to amounts of term insurance excluding amounts of additional insurance." Id. The language in the clause was unclear as to whether "additional insurance" referred to "additional" term insurance or other additional forms of insurance. The court found the language ambiguous stating, "if the words 'additional insurance' . . . were intended to exclude a portion of the term insurance rather than to exclude additional insurance authorized by the policy . . . it should have been so stated." Id. The court construed the policy in favor of the insured because the purported exclusionary clause at the top of the page simply was not clear. Id. at 842 ("The clause relied on by the appellee as an exclusion of some part of the term insurance

---

[4] The plaintiff in Moore had $10,000 in basic term insurance and $40,000 in "additional" term insurance. The trial court awarded only $10,000 and the appeals court reversed, awarding $50,000, reading the conflicting statements in favor of the insured.

. . . did not expressly so provide, and at the most presented an ambiguity . . . .").

Here, the plaintiff alleges that the "Business Liability Coverage Form,"[5] a 20-page section of the Policy, conflicts with the Asbestos Exclusion and that this conflict creates an ambiguity that must be resolved in the plaintiff's favor. The conflict, plaintiff alleges, is based on both the Business Liability Form's general grant of coverage and its pollution exclusion. The general grant of coverage states in part:

> **A. COVERAGES**
>   1. BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY
>       DAMAGE, PERSONAL AND ADVERTISING INJURY)
>     a. We will pay on behalf of the insured those sums that the insured becomes
>        legally obligated to pay as damages because of "bodily injury", "property
>        damage" or "personal and advertising injury" to which this insurance
>        applies.

Bus. Liab. Form § A.1.a. The "Pollution Exclusion" is one of a number of exclusions included in the Business Liability Form and states:

> **B. EXCLUSIONS**
>   1. Applicable to Business Liability Coverage
>       This insurance does not apply to:
>         . . .
>     **f. Pollution**
>         (a) At or from any premises, site or location . . . owned or occupied
>             by . . . [the] insured
>         (b) At or from any premises, site or location . . . used by or for any
>             insured or others for the handling, storage, disposal, processing
>             or treatment of waste.
>         . . .

Bus. Liab. Form § B.1.f. Plaintiff contends that the general grant of coverage read in conjunction with the pollution exclusion "clearly indicates that asbestos would be covered under the Business Liability Form." Pl. SJ memo ¶ 8. Thus, because the Asbestos Exclusion eliminates coverage

---

[5] Hartford Form SS 00 08 04 01.

otherwise "clearly" granted, an ambiguous internal conflict is alleged that "give[s] a right in one paragraph and retract[s] it in another."  Moore, 277 So. 2d at 842.

Plaintiff's construction of the Policy relating to the conflict between the Business Liability Form and the Asbestos Exclusion is flawed.  It appears that plaintiff is correct that without the Asbestos Exclusion endorsement the asbestos release that occurred at Thor's hotel would be covered under the Policy.  However, the failure of the Business Form to exclude asbestos is not synonymous with it being "clearly" included; on the contrary, the word "asbestos" is never even mentioned in the Pollution Exclusion.  Rather, the Pollution Exclusion limits coverage in certain circumstances, and attached endorsements such as the Asbestos Exclusion and Nuclear Energy Exclusion go on to exclude coverage in other circumstances.[6]

The facts here differ from the facts in Moore where two separate provisions directly conflicted and the clause that sought to exclude coverage "did not expressly so provide."  Id. at 842.  Here, there is not one provision that says all asbestos damage is covered and then an Asbestos Endorsement that says asbestos damage is excluded.  Rather, the Business Form merely confers broad protection for all "covered" damages and the remainder of the Policy goes on to explain when something is "covered."[7]

---

[6] Similarly, there is no "conflict" because the Pollution exclusion eliminates coverage relating to "pollutants" in some circumstances, such as when damages result from pollution on a site owned by the insured, and another portion of the Policy excludes coverage in different circumstances, such as when a claim is based in part on damages resulting from asbestos.  The Pollution Exclusion in the Business Form carves out certain situations under which all pollutants will not be covered and the asbestos exclusion carves out further situations relating to one specific pollutant.  There is no inherent conflict merely because the same broad subject matter is addressed in different sections.

[7] The section of the Business Form granting coverage that plaintiff cites in its memorandum and that is cited above states that Hartford will pay money damages resulting from personal injuries and property damages "to which this insurance applies."   The very same clause

Furthermore, even if this court found a conflict between the Business Form and the Asbestos Exclusion, a policy can give a right in one clause and retract it in another, it just cannot do so "[i]n the absence of a clear expression." Moore, 277 So. 2d at 842. Here, there is a clear expression that the Asbestos Exclusion is intended to bar coverage for "any claim or suit" where damage resulted "in whole or in part" from asbestos. Thus, because there is no conflict, this court cannot "liberally construe" the Policy in plaintiff's favor. Even if this court found a conflict, the exclusionary clause clearly intends to bar coverage relating to asbestos, and no other clause clearly confers coverage.[8] See Schneider v. Continental Cas. Co., 989 F.2d 728, 730 n.1 (4th Cir. 1993) (applying Virginia law) (facing almost identical facts the court rejected the plaintiffs' argument that the policy be construed against the insurance company because such "rules of construction apply only when the contract is ambiguous on its face"); Lambert v. Berkley South Condominium Ass'n, 680 So. 2d 588, 590 (Fla. App. 1996) (stating that "when a document's language is clear, a court cannot indulge in construction or interpretation of its plain meaning").

### C. Applying the Asbestos Exclusion, Hartford is not responsible for defending Innternational because Thor's action against Hartford is a "claim or suit" within the language of the Asbestos Exclusion.

---

goes on to state that Hartford "will have no duty to defend the insured against any 'suit' seeking damages . . . to which this insurance does not apply." Bus. Liab. Form § A.1.a. (emphasis added). Thus, even the clause plaintiff relies on as conferring coverage implies that one must look to the rest of the contract to determine when "this insurance applies."

[8] In addition to Moore, plaintiff cites Psychiatric Assocs. v. St. Paul Fire & Marine Ins. Co., 647 So. 2d 134, 138 (1994), which states that exclusionary clauses should be construed more strictly than coverage clauses. However, even construing the asbestos clause "strictly" there is no ambiguity between it and any other clause. Thus, this court must apply the Asbestos Exclusion Clause when evaluating this matter.

The Asbestos Exclusion endorsement of the Hartford-IHS Policy bars coverage if the damages, costs, expenses, etc., the insured seeks to recover: "May be awarded or incurred by reason of <u>any claim or suit</u> alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occured in whole or in part but for the asbestos hazard." The parties stipulate that the insured received a complete copy of the Policy, this court has found that the exclusion does not conflict with the rest of the Policy, and thus, the only issue remaining before this court is the construction and application of the Asbestos Exclusion.

It is well settled in both Florida and Virginia that when interpreting a contract, including an insurance policy, the terms should be accorded their plain meaning. <u>Transcontinental Ins. Co. v. Caliber One Indem. Co.</u>, 367 F. Supp. 2d 994, 1001 (E.D. Va. 2005) (applying Virginia law) ("[U]nambiguous policy terms are given their plain and ordinary meaning."); <u>McCreary v. Florida Residential Prop. & Cas. Joint Underwriting Ass'n</u>, 758 So. 2d 692, 694 (Fla. App. 1999) ("Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties."). Furthermore, the language of the Policy is "not merely one indicium of the contracting parties' intent. It is, to the extent it is unambiguous, determinative of that intent." <u>Schneider v. Continental Cas. Co.</u>, 989 F.2d 728, 732 (4th Cir. 1993).

In conjunction with looking to the terms of the Policy, this court must also examine the underlying complaint brought by Thor. In considering the complaint, this court recognizes that an insurer's duty to defend is broader than its duty to indemnify. <u>Psychiatric Assocs. v. St. Paul Fire & Marine Ins. Co.</u>, 647 So. 2d 134, 137-38 (1994). However, an insurer has no duty to defend if the insured fails to allege facts that bring the claim within the coverage of the insurance

policy.[9] McCreary, 758 So. 2d at 695. Expanding upon the test set forth by the Florida Appeals Court in McCreary, Virginia courts not only consider facts within the complaint, known as the Exclusive Pleading Rule, but also apply the Potentiality Rule, considering whether its possible that judgment against the insured would be covered by the terms of the policy. Transcontinental, 367 F. Supp. 2d at 1000-01. The Transcontinental court summarized: "Thus, to determine whether an insurer has a duty to defend an insured against a suit, a court must determine whether any of the claims asserted in the suit potentially come within the policy's scope of coverage." Id. at 1001.

Applying the Virginia test outlined in Transcontinental,[10] this court must look both to Thor's underlying claims and to the potential that Thor may recover damages within the policy. Thor's claims are based on the "cataclysmic" asbestos release that occurred during renovations. Any and all recovery Thor seeks is a direct result of such asbestos release and is therefore expressly excluded from the Policy.[11] Even if Thor actively concealed the asbestos and fraudulently induced IHS to perform renovations causing its release, the property damage and bodily injury that resulted were still caused at least "in part" by asbestos.[12] Because all potential

---

[9] Thus, if an exclusion in a policy squarely addresses a given situation in which coverage will never apply, there is no duty for the insurance company to defend.

[10] Although application of Virginia's choice of law rules has not been completed, here, this court applies the Virginia test as it appears broader than the Florida test and is therefore to plaintiff's advantage. The McCreary test considers only whether the complaint alleges facts that bring the claim within the policy, whereas the test applied by Virginia considers both the facts alleged in the complaint as well as potential damages that may result from the suit.

[11] The Policy expressly excludes from coverage damages that "would not have occured in whole or in part but for the asbestos hazard." (emphasis added).

[12] Plaintiff, through briefs and oral argument, makes a causation argument addressing the language in the Asbestos Exclusion requiring damages be caused "in whole or in part" from the

damages are related to asbestos and thus fall outside the Policy, Hartford is not responsible to defend IHS.  If it is true that Thor perpetrated a fraud against IHS, IHS should properly recover from Thor, not Hartford, because the Policy specifically excludes coverage in this instance.

Plaintiff further argues that even if the Asbestos Exclusion is intended to cover the damages at issue and passes the <u>Transcontinental</u> test, the Exclusion nevertheless fails to eliminate Hartford's duty to defend IHS because the phrase "any claim or suit" limits the scope of the Exclusion by necessarily implying a "legitimate" claim or suit.  Plaintiff contends that because Hartford was on notice of Thor's deceitful conduct Hartford was under a duty to investigate such conduct to determine whether Thor's claims qualified as "a claim or suit."[13] Plaintiff asks this court to read into the words "claim or suit" a legitimacy standard and to hold Hartford to that standard.  This interpretation of the language of the Asbestos Exclusion fails because to find ambiguity in the face of such clear language this court would have to consider extrinsic evidence, and this court simply does not have the ability to do so.  <u>Schneider</u>, 989 F.2d

---

asbestos hazard.  Plaintiff contends that the damages in the underlying suit were not caused by asbestos but rather by "Thor's criminal concealment of the presence of asbestos."  Pl. SJ memo p.8.  This argument is an inaccurate interpretation of the Policy and the facts of this case.  The hotel was evacuated because of asbestos.  Even if Thor's alleged lies led to the asbestos release, the dangerous substance released into the air was asbestos.  It is plainly wrong to say the damages were not caused at least "in part" by the asbestos hazard.

[13] Looking to Thor's claims, as this court must to determine whether any damages potentially fall within the Policy, there is nothing that indicates that Thor's claims are not "legitimate."  Although this court refuses to graft onto the Policy the word "legitimate," if the court followed plaintiff's proposal and did so, looking to Thor's claims would not end the inquiry because Thor's claims appear legitimate on their face.  Rather, for IHS to prevail, this court would be required to conduct a summary trial to determine the legitimacy of the underlying lawsuit.  Although plaintiff stated at oral argument that it is Hartford's responsibility, not this court's, to conduct the "legitimacy" inquiry, this court would be required to conduct such inquiry to rule on declaratory actions such as the one filed by IHS.  Such a time consuming procedure surely is not required to determine if a given "lawsuit" qualifies as a "suit."

at 731.  In Schneider, the Fourth Circuit Court of Appeals, applying Virginia law, stated:

> A court may not, where the contractual language is clear, invite or accept the submission of extrinsic evidence, "find" ambiguity in the contractual text based upon that evidence, and resolve the found ambiguity by resort to that extrinsic evidence. . . .  The ambiguity that justifies resort to extrinsic evidence must be apparent from the face of the contract.

Schneider, 989 F.2d at 731.  See Cohan v. Thurston, 292 S.E.2d 45, 46 (Va. 1982) (requiring an ambiguity be "apparent on the face of the instrument" and stating that extrinsic evidence "cannot be used to first create an ambiguity and then remove it").

Here, looking at the language of the Policy only, "any claim or suit" is clear and unambiguous.  It is only after one considers extrinsic evidence that a cognizable argument arises that the language "any claim or suit" infers a legitimacy standard.[14]  Thus, this court should not consider the details of the underlying "claim or suit" other than to determine if there is the possibility of recovery that is within the Policy.  Because there is no ambiguity without considering extrinsic evidence, this court is precluded from considering such evidence.  Thus, looking only to the language of the policy, the claims filed by Thor fall within the meaning of the phrase "claim or suit" in the Asbestos Exclusion.  As a result, Hartford is not under a duty to defend IHS because Thor's damages are a result, at least "in part," from the release of asbestos.

---

[14] Nearly all "claims or suits" are likely to be considered illegitimate to the party being sued.  Plaintiff, however, requests this court to apply a standard that would require Hartford to defend any suit, even those specifically excluded under the Policy, simply on the insured's notification that the underlying suit was "illegitimate."  Such a standard would distort the agreement reached between the two parties, especially in light of the language in the coverage section of the Business Liability Form which states: "However, we will have no duty to defend the insured against any 'suit' . . . to which this insurance does not apply." Bus. Liab. Form § A.1.a (emphasis added).

## V. Conclusion

For the reasons stated on the record and discussed above, the defendant's motion for summary judgment is **GRANTED**.   The plaintiff's cross motion is **DENIED**.

The Clerk is **REQUESTED** to mail copies of this Order to counsel of record.

It is so **ORDERED**.

>                   /s /
>          Jerome B. Friedman
>     UNITED STATES DISTRICT JUDGE

October  14 , 2005
Norfolk, Virginia